UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CASE NO.:

GEICO MARINE INSURANCE CO., as
subrogee of Glenn Docter,

      Plaintiff,

v.

ARC ISLAND MARINE, LLC d/b/a ARC MARINE
CONTRACTING, a Florida limited liability company,
and ACRA ELECTRIC, INC., a Florida corporation,

      Defendants.

_____/

**COMPLAINT**

Plaintiff, GEICO MARINE INSURANCE CO., as subrogee of Glenn Docter (hereinafter "GEICO Marine"), by and through its undersigned counsel, files this Complaint against Defendant, ARC ISLAND MARINE, LLC d/b/a ARC MARINE CONTRACTING, (hereinafter "ARC Marine") and ACRA ELECTRIC, INC. (hereinafter "ACRA Electric"), and alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an action in excess of $75,000.00, exclusive of costs, interest, and attorney's fees.

2. Plaintiff GEICO MARINE INSURANCE CO., ("GEICO Marine") is an insurance company engaged in business, in part, in insuring recreational vessels.

GEICO Marine is a Nebraska corporation doing business in the state of Florida, with its principal place of business in Maryland.

3.      At all material times, GEICO Marine insured a 2015 35' Formula 350 Runabout vessel named "*Board Meeting*" with Hull ID: TNRD9182H415, owned by Glenn Docter, pursuant to the terms and conditions of insurance policy No. BSP2415941.

4.      Glenn Docter is a GEICO Marine subrogor.

5.      Defendant ARC ISLAND MARINE, LLC, d/b/a ARC MARINE CONTRACTING ("ARC Marine") is a Florida limited liability company with its principal place of business located in Wisconsin.  ARC Marine maintains an office in Lee County, Florida, and conducts regular business in Lee County, Florida.

6.      At all material times, ARC Marine held itself out as a professional marine salvor possessing the requisite skill, knowledge, and expertise to perform salvage, dewatering, and vessel recovery operations in a safe and workmanlike manner.

7.      Defendant ACRA ELECTRIC, INC. ("ACRA Electric") is a Florida corporation with its principal place of business located in Lee County, Florida.

8.      ACRA Electric is engaged in the business of providing marine electrical services.

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a).  Alternatively, in the event that this Court lacks jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1333.

10.     Venue is proper, pursuant to 28 U.S.C. § 1391 in Middle District of Florida, Fort Myers Division, because both defendants maintain offices and conduct business in Lee County, Florida, and the tortious conduct giving rise to this action was committed in Lee County, Florida.

11.     All conditions precedent to the institution of this action have been satisfied or otherwise excused.

12.     The causes of action in this Complaint arise under the general maritime law of the United States and/or the laws of Florida.

## FACTUAL BACKGROUND

13.     Stokes Marine, a third-party boat lift installer, installed Mr. Docter's boat lift at a slip in Tarpon Point Marina located at 6179 Black Marlin Lane Cape Coral, Florida, on or about June 25, 2013.  ACRA Electric was hired to install the electrical components which was completed on or about July 2013.

14.     On April 17, 2024, Glenn Docter's *Board Meeting* was properly sitting on the electric boat lift out of the water at his slip.

15.     On that date, agents and/or employees of Defendant ACRA Electric were at the slip to verify electrical work that they had previously completed related to the boat lift.

16.     At approximately 11:45 a.m., an agent and/or employee of ACRA Electric pushed the "up" button on the boat lift GEM remote and the boat lift cable immediately parted which caused the boat lift to collapse and *Board Meeting* partially sunk at the slip.

17.     The vessel was partially submerged with gelcoat damage.

18.     Approximately an hour later, Defendant ARC Marine, a professional salvor, was engaged to salvage, de-water, and secure the vessel.

19.     During the salvage, however, ARC Marine negligently salvaged the vessel causing severe damage distinguishable from that which the vessel would have suffered had salvage not been undertaken.

20.     The vessel was left at the bottom of the marina overnight suffering catastrophic damage.

21.     The vessel was inspected and declared a total loss.

22.     GEICO Marine has suffered total damages in the amount of $178,334.39. Among that total, GEICO Marine paid the subrogor $160,000 for the total loss of the vessel, expert fees totaling $18,154.39, and storage fees of $180.00.

**COUNT I – NEGLIGENCE AGAINST ARC MARINE**

Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 21 as if fully set forth herein.

23.     As a professional marine salvor, ARC Marine owed GEICO Marine's subrogor a duty to exercise reasonable care under the circumstances and to perform its salvage operations in accordance with the standards of a reasonably prudent and competent salvor.

24.     ARC Marine breached its duty of reasonable care by, inter alia:

   a.  Failing to properly assess the vessel's condition, buoyancy, and structural integrity prior to and during salvage operations;

b. Employing improper, unsafe, or inadequate salvage methods, equipment, and/or procedures;

c. Failing to timely and adequately dewater, stabilize, and refloat the vessel;

d. Failing to take reasonable measures to prevent further water intrusion and progressive damage;

e. Failing to adequately monitor the vessel during and after salvage operations;

f. Leaving the vessel submerged and unprotected at the bottom of the marina overnight; and

g. Otherwise failing to act as a reasonably prudent professional marine salvor under like circumstances.

25. Specifically, ARC Marine failed to adequately inspect the vessel prior to salvage and failed to use float bags and/or trash pumps to hold the stern afloat and manually lower the boat lift; instead, ARC Marine negligently cut all cables allowing the vessel to drop into the water without float bags, among others.

26. But for ARC Marine's negligence, the vessel was reasonably capable of being salvaged, stabilized, and preserved without sustaining catastrophic loss.

27. ARC Marine's negligent acts and omissions directly and proximately caused damage to the vessel that was distinct from and substantially greater than any damage the vessel would have sustained had ARC Marine exercised reasonable care.

28. After ARC Marine cut the cables, *Board Meeting* sunk to the bottom of the marina where it stayed overnight.

29.     As a direct and proximate result of ARC Marine's negligence, *Board Meeting* suffered severe and progressive deterioration and was rendered a total loss.

30.     Pursuant to its policy of insurance with the GEICO Marine subrogor, GEICO Marine paid for and is subrogated to the vessel owners' rights for damages for or repair costs paid to its insured for damages caused by Defendants' acts or omissions, and pursuant to the coverage provided by the policies to the vessel owner, Glenn Docter.

31.     As a direct and proximate result of ARC Marine's negligence in salvaging *Board Meeting* GEICO Marine has suffered damages in the amount of $178,334.39.

32.     ARC Marine is jointly and severally liable for the damages, pursuant to general maritime law.

WHEREFORE Plaintiff GEICO MARINE INSURANCE CO. demands judgment against ARC MARINE for damages, with interest, including costs, prejudgment interest, and other relief this Court deems just and proper.

## COUNT II – BREACH OF IMPLIED WARRANTY AGAINST ARC MARINE

Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 21 as if fully set forth herein.

33.     Plaintiff's agent engaged ARC Marine to salvage, de-water, and secure the vessel *Board Meeting* following its partial submersion at the slip.

34.     At all material times, ARC Marine owed GEICO Marine's subrogor an implied warranty to perform its salvage services in a reasonably safe, proper, and

workmanlike manner consistent with the standards of a competent professional marine salvor.

35.     ARC Marine breached its implied warranty of workmanlike performance by, inter alia:

    a.  Failing to properly assess the vessel's condition, stability, and structural integrity prior to undertaking salvage operations;

    b.  Utilizing improper, unsafe, or inadequate salvage methods, equipment, and/or procedures;

    c.  Failing to timely and adequately dewater and stabilize the vessel;

    d.  Failing to take reasonable measures to prevent further ingress of water and progressive damage;

    e.  Failing to secure and protect the vessel following salvage efforts; and

    f.  Otherwise conducting salvage operations in a manner that fell below the standard of a reasonably prudent professional salvor.

36.     Specifically, ARC Marine failed to adequately inspect the vessel prior to salvage and failed to use float bags and/or trash pumps to hold the stern afloat and manually lower the boat lift; instead, ARC Marine negligently cut all cables allowing the vessel to drop into the water without float bags.

37.     After ARC Marine cut the cables, *Board Meeting* sunk to the bottom of the marina where it stayed overnight.

McALPIN FLOREZ MARCOTTE, P. A.
9130 S. DADELAND BLVD., SUITE 1900, MIAMI, FLORIDA 33156 * TEL (305) 810-5400 * FAX (305) 810-5401

38.    ARC Marine's breach resulted in the vessel being left submerged at the bottom of the marina overnight, thereby causing catastrophic deterioration and rendering *Board Meeting* a total loss.

39.    As a direct and proximate result of ARC Marine's breach of the implied warranty of workmanlike performance, the vessel sustained severe and progressive damage distinguishable from and in excess of any damage that would have occurred had competent salvage operations been performed or had the vessel remained in its partially submerged condition.

40.    Pursuant to its policy of insurance with the GEICO Marine subrogor, GEICO Marine paid for and is subrogated to the vessel owners' rights for damages for or repair costs paid to its insured for damages caused by Defendants' acts or omissions, and pursuant to the coverage provided by the policies to the vessel owner, Glenn Docter.

41.    As a direct and proximate result of ARC Marine's breach, GEICO Marine has suffered damages in the amount of $178,334.39.

42.    ARC Marine is jointly and severally liable for the damages, pursuant to general maritime law.

WHEREFORE Plaintiff GEICO MARINE INSURANCE CO. demands judgment against ARC MARINE for damages, with interest, including costs, prejudgment interest, and other relief this Court deems just and proper.

### COUNT III – NEGLIGENCE AGAINST ACRA ELECTRIC

Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 21 as if fully set forth herein.

43.    At all material times, ACRA Electric was engaged to perform electrical installation, inspection, maintenance, and/or verification work in connection with the subject boat lift and its associated electrical systems at Tarpon Point Marina.

44.    ACRA Electric owed a duty to GEICO Marine's subrogor to exercise reasonable care under the circumstances in performing electrical work, inspections, testing, and operation of the boat lift system, including the duty to avoid causing damage to the vessel and associated equipment.

45.    ACRA Electric breached its duty to GEICO Marine's subrogor by, inter alia:

a. Failing to properly inspect and verify the condition and integrity of the boat lift system prior to operating it;

b. Operating the boat lift without ensuring that it was safe and fit for use;

c. Failing to identify and remedy dangerous conditions in the lift system, including compromised or inadequate lift components;

d. Improperly testing, energizing, or activating the lift system;

e. Failing to follow applicable standards, practices, and procedures for marine electrical work and boat lift operation; and

f. Otherwise acting negligently in the inspection, verification, and operation of the boat lift.

46.     ACRA Electric knew or had reason to know that operation of a compromised lift system or improperly operating the lift system could result in catastrophic failure and vessel submersion.

47.     As a direct and proximate result of ACRA Electric's negligence, the boat lift cable parted, causing the lift to collapse and the vessel *Board Meeting* to fall and become partially submerged.

48.     ACRA Electric's negligence directly and proximately caused significant damage to the vessel, including but not limited to submersion-related damage and associated losses.

49.     Pursuant to its policy of insurance with the GEICO Marine subrogor, GEICO Marine paid for and is subrogated to the vessel owners' rights for damages for or repair costs paid to its insured for damages caused by Defendants' acts or omissions, and pursuant to the coverage provided by the policies to the vessel owner, Glenn Docter.

50.     GEICO Marine has suffered damages in the amount of $178,334.39 due to ACRA Electric's negligence.

51.     ACRA Electric is jointly and severally liable for the damages, pursuant to general maritime law.

WHEREFORE Plaintiff GEICO MARINE INSURANCE CO. demands judgment against ACRA ELECTRIC for damages, with interest, including costs, prejudgment interest, and other relief this Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff respectfully demands trial by jury on all issues so triable.

Dated:  April 16, 2026

Respectfully submitted,


By: */s/ Richard J. McAlpin*
Richard J. McAlpin
Florida Bar No.: 438420
Daniel Scott Marcotte
Florida Bar No.: 52314
Matthew Street, Esq.
Florida Bar No.: 1013945
rmcalpin@mfm-maritime.com
dmarcotte@mfm-maritime.com
mstreet@mfm-maritime.com
**McAlpin Florez Marcotte, P.A.**
9130 S. Dadeland Blvd., Suite 1900
Miami, FL 33156
Tel: (305) 810-5400
Fax: (305) 810-5401
*Counsel for Plaintiff*